UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LESTER Q. JONES,

                                 Plaintiff,

              v.

DR. LINDSEY PRYOR et al.,

                               Defendants.

9:18-CV-1369
(GLS/DJS)

---

APPEARANCES:

LESTER Q. JONES
08-A-5059
Plaintiff, pro se
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902


GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Lester Q. Jones commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") by filing a pro se civil rights complaint together with an application for leave to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 5 ("IFP Application"). By Decision and Order of this Court filed January 7, 2019, plaintiff's IFP Application was granted, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court severed and transferred certain of plaintiff's claims to the Western District of New York, and dismissed the remaining claims for failure to state a claim

upon which relief may be granted. Dkt. No. 7 (the "January 2019 Order"). In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id*. Presently before this Court is plaintiff's amended complaint. Dkt. No. 8 ("Am. Compl.").

II. **DISCUSSION**

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the January 2019 Order and it will not be restated in this Decision and Order. *See* January 2019 Order at 2-4.

In the original complaint, plaintiff alleged that he was taken by ambulance to Auburn Community Hospital because of an emergency medical condition, where he was treated by defendants Doctor Lindsey Pryor and Nurse Ostrander. Compl. at 5-6.[1] Plaintiff further alleged that these defendants violated his constitutional rights when defendant Ostrander searched plaintiff's "anal cavity" at defendant Pryor's direction, and defendant Pryor "administer[ed] a powerful anesthetic" in an effort to treat plaintiff's condition, which only worsened as a result. *Id.* Plaintiff further alleged that defendants Pryor and Ostrander subjected him to mistreatment, and failed to accurately report the cause of plaintiff's condition, because of a "prejudice" stemming from a belief that plaintiff was "a known gang member and part of a drug ring." *Id.* at 16-17.

The Court liberally construed the complaint to allege an Eighth Amendment medical indifference claim and a Fourth Amendment unreasonable search claim against defendants

---

[1] The Court will not discuss in this Decision and Order plaintiff's allegations or claims that were severed and transferred to the Western District of New York. The Court will only note that the amended complaint does not name as defendants the individuals who were terminated from this action in the January 2019 Order.

2

Pryor and Ostrander. *See* January 2019 Order at 5-6.[2] The Court dismissed plaintiff's claims against defendants Pryor and Ostrander without prejudice because the allegations in the complaint failed to plausibly suggest that these defendants were state actors for Section 1983 purposes. *See id.* at 9-11.

Plaintiff has submitted an amended complaint in which he re-asserts the same claims against defendants Pryor and Ostrander, including a Fourteenth Amendment substantive due process claim. *See* Am. Compl.[3] Plaintiff's allegations are similar to those made in the original complaint, except that plaintiff now alleges that defendants Pryor and Ostrander were state actors when they treated him at Auburn Community Hospital. *Id.* at 3-4.[4] The following facts are set forth as alleged by plaintiff in his amended complaint.

Before the date that plaintiff was seen by defendants Pryor and Ostrander, he had "never been a patient at Auburn Community Hospital[.]" Am. Compl. at 3. When plaintiff arrived at Auburn Community Hospital, he was brought in through the emergency room. *Id.* Defendants Pryor and Ostrander knew that plaintiff was a prisoner when they treated him, and therefore "voluntarilly [sic] assume[d] the State's obligation to provide medical care[.]" *Id.* Because Auburn Community Hospital "chose to accept prisoners as patients" the hospital had a "contractual agreement" with the New York State Department of Corrections and Community Supervision (DOCCS) to render treatment to inmates, and, as employees of the

---

[2] Although plaintiff also asserted a Fourteenth Amendment substantive due process claim against defendant Pryor, he did not explain the basis of this claim, and the Court did not construe the complaint to have asserted such a claim. *See* January 2019 Order at 6 n.4.

[3] Plaintiff also clarifies that his Fourth Amendment claim is also based on defendants Pryor and Ostrander administering medication to him. Am. Compl. at 5.

[4] Plaintiff has also attached certain medical records as exhibits to his amended complaint. *See* Dkt. No. 8-2.

3

hospital, defendants Pryor and Ostrander assumed the obligations of this "contract." *Id*.

Plaintiff assumes the existence of a "contractual agreement" between Auburn Community Hospital and DOCCS solely because the hospital accepted plaintiff as a patient. However, by his own allegations, plaintiff was not an existing patient of Auburn Community Hospital at the time he was seen by defendants Pryor and Ostrander, but rather was admitted to the hospital through the emergency room for emergency medical treatment. Am. Compl. at 3. In fact, one of the exhibits attached to the amended complaint is a medical report, which indicates that plaintiff was "unresponsive and had to be intubated" while in the "emergency department." *See* Dkt. No. 8-2 at 1. The amended complaint does not allege that this report is in any way inaccurate.

Moreover, plaintiff does not allege that any officials employed by DOCCS selected the hospital where plaintiff would receive treatment. Indeed, the amended complaint does not contain any allegations regarding plaintiff's transport to Auburn Community Hospital. The original complaint, however, contains allegations that plaintiff "stopped breathing" while in the ambulance and had to be "rerooted [sic] from SUNNY [sic] Upstate to Auburn Community Hospital[.]" Compl. at 5. Thus, the only allegations before the Court plausibly suggest that the decision for plaintiff to receive treatment at Auburn Community Hospital was made by the individuals who were supposed to transport plaintiff to a state hospital (who are not alleged to be DOCCS officials) because of the emergency nature of plaintiff's condition.

In the January 2019 Order, the Court noted as follows with regard to emergency medical treatment at a private hospital:

> Pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, a facility which participates in the federal Medicare program, such as Auburn Community Hospital, is mandated to

4

> treat all patients who present themselves for medical care. EMTALA imposes two primary obligations on mandated hospitals. "First, when an individual shows up for treatment at a hospital's emergency room, 'the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition' . . . exists." *Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 792 (2d Cir.1999) (quoting 42 U.S.C. § 1395dd(a)). "Second, if the screening examination indicates that an emergency medical condition does exist, the hospital ordinarily must 'stabilize the medical condition' before transferring or discharging the patient." *Id*. (quoting 42 U.S.C. § 1395dd(b)(1)(A)).

January 2019 Order at 9.

Based on the aforementioned, there is no basis for accepting plaintiff's conclusory allegation that there was an implied agreement between DOCCS and Auburn Community Hospital to assume the State's medical care obligation to inmates. The allegations in the original and amended complaints, and the accompanying record evidence, make clear that the obligation of defendants Pryor and Ostrander to treat plaintiff arose from plaintiff's status as an incoming patient to the emergency room, and not from his status as an inmate. *See Brown v. Pangia*, No. 11-CV-6048, 2014 WL 2211849, at *3 (S.D.N.Y. May 27, 2014) ("No emergency room patient chooses her healthcare provider, and Plaintiff has not alleged any facts that demonstrate that the state was involved in Defendant's treatment aside from the police calling an ambulance. . . . Defendant's obligation to treat Plaintiff did not arise from Plaintiff's status as an arrestee but from his status as an incoming patient to the emergency room."). The Court agrees with the holding in *Sykes v. McPhillips* that the hospital's "[w]illingness to accept [plaintiff as a patient] under these circumstances cannot be construed, even impliedly, as contracting to provide emergency medical services." 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006); *see Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *10-11 (S.D.N.Y. Sept. 28, 2018) (dismissing Section 1983 claims against

5

physician based on emergency treatment rendered at private hospital, noting that allegations of "one-time treatment of Plaintiff, as a result of Plaintiff's being 'rushed' to St. Luke's Hospital," are insufficient to satisfy Section 1983's state actor requirement); *Kavazanjian v. Rice*, No. 03-CV-1923, 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008) ("Providing isolated emergency treatment to a prisoner on equal terms with the general public . . . does not constitute state action."); *Morse v. City of New York*, No. 00-CV-2528, 2001 WL 968996, at *8 (S.D.N.Y. Aug. 24, 2001) ("The fact that [the plaintiff] was brought to the hospital from police custody and was released from the hospital into police custody is insufficient to transform this private hospital and its staff into state actors for [§] 1983 purposes.").

As a result, the amended complaint lacks allegations which plausibly suggest that defendants Pryor and Ostrander were state actors when they rendered emergency medical treatment to plaintiff. Because plaintiff has already had one opportunity to amend his complaint, this action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.[5]

## III. CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that this action alleging federal claims under Section 1983 is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

---

[5] Although plaintiff's federal constitutional claim is dismissed with prejudice, plaintiff is free to pursue any available state law claims in the appropriate state court.

state a claim upon which relief may be granted.[6] The Clerk is directed to terminate defendants Pryor and Ostrander and close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

February 8, 2019
Albany, New York

*Gary L. Sharpe*
U.S. District Judge

---

[6] Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord*, *Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.13, 2008); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).